# IN THE COURT OF APPEALS 2/25/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 94-KA-00996 COA

**GARLAND THOMAS, JR.**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. MARCUS D. GORDON

COURT FROM WHICH APPEALED: LEAKE COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

JAMES E. MCLEMORE, JR.

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: W. GLENN WATTS

DISTRICT ATTORNEY: J. KENNEDY TURNER

NATURE OF THE CASE: ARMED ROBBERY

TRIAL COURT DISPOSITION: CONVICTED OF ARMED ROBBERY; SENTENCED TO 40
YRS IN THE MDOC

MANDATE ISSUED: 7/3/97

BEFORE THOMAS, P.J., PAYNE, AND SOUTHWICK, JJ.

THOMAS, P.J., FOR THE COURT:

Garland Thomas, Jr. appeals his conviction of armed robbery, raising the following issues as error:

> **I. THE TRIAL COURT ERRED IN ALLOWING THE VICTIM TO IDENTIFY THE DEFENDANT IN COURT BASED ON A PREVIOUSLY SUGGESTIVE LINEUP.**
>
> **II. THE COURT ERRED BY NOT SUSTAINING AN OBJECTION TO REMARKS MADE BY THE DISTRICT ATTORNEY DURING CLOSING ARGUMENTS.**

Finding no error, we affirm.

## FACTS

On July 17, 1994, Delmas Daugherty was driving to his home when he noticed someone in a Jeep Cherokee with tinted windows following him. Daugherty turned into his driveway as the Jeep drove past. When Daugherty went to enter his home, two men from the Jeep approached him and asked to use the phone. Daugherty let the men into his home. The two men then proceeded to rob Daugherty at gunpoint of money, three guns and two telephones. The men were not wearing masks during the robbery. Daugherty estimated the robbery lasted over thirty minutes.

Daugherty attended two lineups in connection with his robbery. At the first lineup, Thomas was not present, and Daugherty did not pick anyone out of the lineup. At the second lineup, Daugherty picked out Garland Thomas, Jr. and Milwaldo Gilford as being his assailants. Although Daugherty later stated he was not sure about Gilford being one of the robbers, Daugherty testified he was "dead sure" that Thomas was the man who robbed him. Thomas was the only person in the second lineup with a beard and characteristics similar to those of Thomas.

## ANALYSIS

### I.

### WAS THE PRE-TRIAL LINEUP IMPERMISSIBLY SUGGESTIVE?

Prior to trial, Thomas filed a motion to quash his identification as one of the robbers based on the lineup identification by Daugherty. The trial judge took up the matter during the trial, and overruled the motion, concluding there was no conduct to suggest an impermissive identification.

During the second lineup, Daugherty picked Thomas out of a lineup that included other black males of similar size. The lineup was held one week after the crime took place. Daugherty testified that as soon as he saw Thomas' face, he was certain Thomas was his assailant. Daugherty never swayed

from this position. Daugherty had the opportunity to observe Thomas under good lighting conditions for a substantial length of time. During this time, Thomas was not wearing a mask or concealing his face.

The granting or denial of a motion to quash a pre-trial identification is one of "a finding of fact that, under the totality of the circumstances, . . . in court identification testimony had not been impermissibly tainted." *Ray v. State*, 503 So. 2d 222, 223 (Miss. 1986). We will reverse on this matter only where there is an absence of substantial credible evidence to support the denial of the motion. *Id.* at 223-4; *Watts v. State*, 492 So. 2d 1281, 1289 (Miss. 1986).

Thomas' argument under the due process analysis deals with the suggestiveness of the lineup. He points out that he was the only person in the lineup with a beard, and that he was placed first in the lineup. Thomas argues these factors made the lineup impermissibly suggestive. However, the Supreme Court has held that an impermissibly suggestive pre-trial identification does not disallow the in-court identification by an eyewitness who had the opportunity to view the suspect at the pre-trial procedure "unless: (1) from the totality of the circumstances surrounding it, (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Nicholson v. State*, 523 So. 2d 68, 72 (Miss. 1988) (quoting *York v. State*, 413 So. 2d 1372, 1383 (Miss. 1982)).

The Supreme Court has followed the independent factor analysis, as set out in *Neil v. Biggers*, 409 U.S. 188 (1972), to consider whether the pre-trial identification is impermissibly suggestive. These factors include the opportunity of the witness to view the suspect during the commission of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Id.* at 199-200; *Nicholson* at 72-3; *York*, 413 So. 2d at 1381.

Applying these factors to the present case,

> 1. Opportunity to view the accused.
>
> Daugherty testified that the robbery took somewhat longer than thirty minutes. Thomas was in the face of Daugherty for a substantial part of the thirty minutes. Daugherty was brought to different parts of his house by Thomas to look for jewelry and money. Daugherty was not forced to wear a mask or hood, and neither of his perpetrators were covering their faces. This testimony shows ample opportunity for Daugherty to observe his assailant.
>
> 2. Degree of attention.
>
> During his observation of Thomas, Daugherty noticed that Thomas had a beard and a light skin complexion. Thomas admitted to being a light-skinned person with a beard.
>
> 3. Accuracy of prior description.
>
> Daugherty gave the police a description of the two men who had robbed him, and also a description of the Jeep vehicle driven by his assailants. Daugherty identified the Jeep in

person at the police station and also identified pictures of the Jeep during the trial. Daugherty gave a description of Thomas and Milwaldo Gilford to Deputy Smith. Although Deputy Smith did not delineate into the record the actual physical characteristics given to him by Daugherty, Deputy Smith testified that he arrested Thomas based on the physical description given by Daugherty, and also based on the description of the vehicle and Thomas' claim of ownership to the vehicle. Gilford was arrested based on the physical description given by Daugherty.

4. Level of certainty exhibited by the witness at the confrontation.

At the first lineup, Daugherty did not select anyone as being his assailant. Thomas was not in this lineup. At the second lineup, Daugherty quickly identified Thomas as his assailant. Daugherty stated he was "dead sure" and certain that Thomas committed the robbery. Daugherty never swayed from this position.

5. Length of time between the crime and the confrontation.

The lineup in which Thomas was chosen was held a week after the robbery. The trial was less than two months from the time of the robbery.

Under these circumstances, we conclude ample evidence existed to support the trial court's ruling to overrule the motion to exclude the pre-trial identification. The evidence supports the proposition that there was no substantial likelihood of misidentification in allowing both the out-of-court, and the in-court identification of Thomas.

## II.

### DID THE TRIAL COURT ERR DURING CLOSING ARGUMENTS?

Thomas argues the trial court erred when the court did not sustain an objection to remarks made by the District Attorney during closing arguments. Thomas argues the District Attorney erred when he stated "[a]fter [Daugherty] viewed the lineup, he told the jailer, I'm sure about Garland Thomas, but I might be mistaken about Milwando Gilford." Thomas objected to this statement at trial, and argues Daugherty did not tell anyone about his mistake until two weeks later. The trial judge overruled the objection.

Counsel is limited in his argument to facts introduced in evidence, deductions and conclusions he may reasonably draw therefrom, and the application of the law to the facts. *Ivy v. State*, 589 So. 2d 1263, 1266 (Miss. 1991); *Monk v. State,* 532 So. 2d 593, 601 (Miss. 1988); *Davis v. State*, 530 So. 2d 694, 701-2 (Miss. 1988). Parties are given great latitude in making their closing arguments. *Dunaway v. State*, 551 So. 2d 162, 163 (Miss. 1989); *Monk*, 532 So. 2d at 601. The facts in evidence show that Daugherty came back the day after the second lineup took place to tell the proper authorities that he had made a mistake in identifying Mawalda Gilford as his second assailant. The record further indicated Daugherty was told by the sheriff not to say anything about his error until the grand jury met. This evidence supports the conclusion that the District Attorney's closing remarks were proper and within the boundaries of the law.

THE JUDGMENT OF THE LEAKE COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF 40 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS ARE TAXED TO LEAKE COUNTY.

BRIDGES, C.J., MCMILLIN, P.J., BARBER, COLEMAN, DIAZ, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.

HERRING, J., NOT PARTICIPATING.